## Case No. 8,228.

### In re LELAND et al.

[5 Ben. 168;[1] 5 N. B. R. 222; 4 Am. Law T. 185; 1 Am. Law T. Rep. Bankr. 284.]

District Court, N. D. New York. May 5, 1871.

PROCEEDINGS IN DIFFERENT DISTRICTS—MEMBERSHIP IN DIFFERENT FIRMS—DIFFERENT CLASSES OF CREDITORS.

1. S. L., C. L. and W. L. were partners in business under the name of S. L. & Co., in the Southern district of New York, where all three resided. W. L. and C. L. were partners in business in the Northern district, under the name of L. Brothers. On March 24, 1871, a petition in involuntary bankruptcy was filed in the Southern district against S. L. & Co., under which all three were adjudicated bankrupts on April 1. On April 29th the register executed an assignment of all the estate, real and personal, of all three, and the assignee took possession under that assignment. On April 14 a similar petition was filed in the Northern district against W. L. and C. L., making the firm of L. Brothers, under which a motion was made for an adjudication of bankruptcy. Held, that under the proceedings in the Southern district, the assignee had taken all the interests of C. L. and W. L. in the firm of L. Brothers, which firm was ipso facto dissolved by their bankruptcy.

2. A discharge properly granted in those proceedings would be available to C. L. and W. L. in respect to the indebtedness of the firm of L. Brothers.

   [Cited in Re Morrill, Case No. 9,820; Amsinck v. Bean, 22 Wall. [89 U. S.] 404; Re Webb, Case No. 17,317.]

3. The creditors of L. Brothers would be entitled to a preference over other creditors of C. L. and W. L., or either of them, so far as the property of L. Brothers would pay the same, and such preference would be secured to them under the proceeding in the Southern district.

4. It was not proper to proceed to an adjudication in this case while the proceedings in the Southern district were pending.

5. Although the creditors of L. Brothers could not vote for assignee in the proceedings in the Southern district, they might, by showing cause, prevent the confirmation of an improper assignee, or apply for his removal.

In bankruptcy.

S. B. Pike, Jr., for creditors.
George Gorham, for bankrupts.

HALL, District Judge. On the 14th April, 1871, a petition in bankruptcy was filed in this court, against Warren Leland and Charles Leland, constituting the firm of Leland Brothers, who had carried on business as hotel keepers, &c., at Saratoga Springs, in this district, for the six months next preceding the filing of such petition, and which business had been carried on by them in such firm name—they being the only members of such firm.

Upon the hearing of the motion for an adjudication in bankruptcy, under such petition, it was shown that on the 24th March, 1871, a petition in bankruptcy had been filed against said Warren Leland and Charles Leland, and one Simeon Leland, as partners

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

under the firm name of Simeon Leland & Co.; that such petition was filed in the Southern district of New York, where they severally resided, and in which they had carried on business as copartners in a firm consisting of said Simeon, Warren and Charles Leland; that under said last-mentioned petition the said Simeon, Warren and Charles Leland were, on the first day of April, 1871, adjudicated bankrupts; that on the 29th day of April, 1871, the register to whom the case had been referred, executed an assignment to Edward B. Wesley (who had been appointed assignee of such bankrupts), of all the estate, real and personal, of the said Simeon, Charles and Warren Leland, including all the property of whatever kind in which they were interested, &c.; and that under such assignment said assignee had taken possession of all the property of said Warren Leland and Charles Leland, in this district, and then held the same, claiming the right so to hold it as such assignee.

It was conceded that the said Simeon, Warren and Charles Leland were all residents of the said Southern district, and that their domicil was in that district during the six months next preceding the filing of each of said petitions, and that the petition so filed against them in the Southern district, was filed before any petition was filed by or against any or either of them in this district.

It was not claimed on the part of the petitioning creditors in this case, nor does it appear from the petition herein, that the acts of bankruptcy charged in this petition were not committed prior to the filing of the said petition in the Southern district; or that Warren Leland or Charles Leland had come into the possession of, or had become entitled to any property, after the filing of such last-mentioned petition and before the filing of the petition in this case. It also appeared by the petition in this case, that the debt of the petitioning creditors, on which such petition was founded, was contracted prior to the filing of the petition in the Southern district.

Under this state of facts it was insisted by the respondents that this court ought not to proceed to an adjudication, and that the assets and property of the firm of Leland Brothers, as well as of the firm of Simeon Leland & Co., and the separate estates and properties of the several members of the firm last named, passed to the assignee so appointed in the Southern district, and should be applied to the payment of the debts of such firms and of such bankrupts individually, under the direction or control of the bankruptcy court of the Southern district.

On the other hand, it was insisted that the firm of Leland Brothers was as distinct from the firm of Simeon Leland & Co. as though the two firms were composed of entirely different persons; that under the proceedings in the Southern district, the assignee appointed therein had no right to the property and assets of Leland Brothers, and that this court should therefore proceed in this case so as to allow the joint estate of the firm of Leland Brothers to be administered by an assignee chosen by the creditors of the firm, and not by an assignee in whose selection they could take no part.

The 36th section of the bankruptcy act [of 1867 (14 Stat. 534)], which relates exclusively to the bankruptcy of partnerships, and which must be considered in connection with the questions under discussion, provides: "That when two or more persons who are partners in trade shall be adjudged bankrupt, either on the petition of such partners or any one of them, or on the petition of any creditor of the partners, a warrant shall issue in the manner provided by this act, upon which all the joint stock and property of the copartnership, and also all the separate estate of each of the partners, shall be taken, excepting such parts thereof as are hereinbefore excepted; and all the creditors of the company, and the separate creditors of each partner, shall be allowed to prove their respective debts, and the assignee shall be chosen by the creditors of the company, and shall also keep separate accounts of the joint stock or property of the copartnership, and of the separate estate of each member thereof, and after deducting out of the whole amount received by such assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors; and if there shall be any balance of the separate estate of any partner after the payment of his separate debts, such balance shall be added to the joint stock for the payment of the joint creditors; and if there shall be any balance of the joint stock after the payment of the joint debts, such balance shall be divided and appropriated to and among the separate estate of the several partners according to their respective right and interest therein, and as it would have been if the partnership had been dissolved without any bankruptcy; and the sum so apropriated to the separate estate of each partner shall be applied to the payment of his separate debts, and the certificate of discharge shall be granted or refused to each partner as the same would or ought to be if the proceedings had been against him alone under this act; and in all other respects the proceedings against partners shall be conducted in the like manner as if they had been commenced and prosecuted against one person alone. If such copartners reside in different districts, the court in which the petition is first filed shall retain exclusive jurisdiction over the case."

General order in bankruptcy 16, which re-

lates to the filing of petitions in different districts, must also be considered. It is in the following words:—"In case two or more petitions shall be filed against the same individual in different districts, the first hearing shall be had in the district in which the debtor has his domicil; and such petition may be amended by inserting an allegation of an act of bankruptcy committed at an earlier date than that first alleged, if such earlier act is charged in either of the other petitions; and in case of two or more petitions against the same firm in different courts, each having jurisdiction of the case, the petition first filed shall be first heard, and may be amended by the insertion of an allegation of an earlier act of bankruptcy than that first alleged, if such earlier act is charged in either of the other petitions; and in either case, the proceeding upon the other petitions may be stayed until an adjudication is made upon the petition first heard; and the court which makes the first adjudication of bankruptcy shall retain jurisdiction over all proceedings therein until the same shall be closed. In case two or more petitions for adjudication of bankruptcy shall be filed in different districts by different members of the same copartnership for an adjudication of the bankruptcy of said copartnership, the court in which the petition is first filed, having jurisdiction, shall take and retain jurisdiction over all proceedings in such bankruptcy until the same shall be closed; and if such petitions shall be filed in the same district, action shall be first had upon the one first filed."

It is apparent that a case like the present was not in the actual contemplation of the persons who dictated the phraseology of this 36th section and this 16th general order at the time such phraseology was adopted, and it must be conceded that, strictly and literally construed, section 36 cannot be said to provide, in express terms, for the taking upon the warrant to be issued against the bankrupt of any property except the joint stock and property of the copartnership and "the separate estate of each of the partners;" or for the keeping of separate accounts of anything but the joint stock or property of the copartnership and of the separate estate of each member thereof; or for the appropriation of the joint property of any two of the members of the firm of three partners who may constitute another and distinct firm with a separate and distinct joint estate, and with separate and distinct copartnership debts, to the payment of the firm debts of such two copartners, in preference to the debts of the other firm of three partners, or the individual debts of the members of such copartnership. But the express provisions of this section, as applicable to the estate and debts of a single firm, and the separate property and individual debts of the members of such firm, are only declaratory of the acknowledged principles of equity upon which the court would marshal the assets in the absence of such provisions, and this fact, as well as the general purpose and provisions, and the entire scope and policy of the bankruptcy act should be considered in determining the questions presented in this case.

It is quite clear under the 11th, 36th and other sections of the bankruptcy act, that when all the members of a firm petition for the benefit of the act, they are jointly and severally bound to make in the proper schedules the required statements of all their debts and creditors, whether such debts are copartnership or individual debts, or debts due by them jointly with other persons not parties to the petition, and also to set forth in their inventories the copartnership and individual property, and also property owned by either of them jointly with persons other than the parties who are joint petitioners. Section 11 and form No. 2 annexed to general orders. The discharge to be granted under a copartnership or individual petition is in form and in law a discharge from all the debts of the bankrupt or bankrupts (except as specially excepted in the act), and it will hardly be claimed that a discharge properly granted to a bankrupt upon his separate petition, would not bar a debt against him for which he was jointly liable with another not a party to the proceeding. Section 32. By the 14th section of the act, the assignment is to vest in the assignee "all the estate, real and personal, of the bankrupt," except, &c., and of course all property owned by him as a tenant in common or a partner with another, would pass to the assignee. And other language in the same section shows that such property and all other rights and interests of the bankrupt not excepted from the operation of the act must pass to the assignee, subject, of course, to any legal or equitable liens which are irrevocably fixed thereon. The 21st section seems to contemplate that a bankrupt may be liable as maker, acceptor, drawer, or indorser, upon a bill of exchange, promissory note, or other obligation, as a member of two or more firms carrying on separate and distinct trades, and having distinct estates to be wound up in bankruptcy, and when such firms are composed in whole or in part of the same individuals; and also seems to contemplate that the distinct estates of separate firms, composed in whole or in part of the same individuals, may be wound up in the same proceeding, and the assets of the different firms properly marshalled so as to be applied to the payment of the debts of the proper firm.

Upon the best consideration I have been able to give this case, I am of the opinion that under the proceedings in the Southern district, the assignee there appointed has taken all the interests of Charles and Warren Leland in the firm property of Leland Brothers, which firm was ipso facto dissolved by their bankruptcy; that a discharge

properly granted to Simeon, Warren and Charles Leland, in those proceedings, will be available to Charles and Warren Leland, in respect to the indebtedness of the firm of Leland Brothers; and that the creditors of the copartnership of Leland Brothers are entitled to a preference over other creditors of Warren and Charles Leland, or either of them, so far as the property and estate of Leland Brothers will pay the same; and that such preference will necessarily be secured to them under the proceedings against the three Lelands in the Southern district. Under these conclusions I think it improper to proceed to an adjudication in this case, while such proceedings in the Southern district are still pending.

In England it appears to be settled that a joint and a separate commission in bankruptcy cannot subsist at the same time (Eden, Bankr. 61), and the bankruptcy court there exercises a discretion of superseding or suspending the separate commission and permitting the estate to be administered under the joint commission; by which means, it is said, great expense is saved, and the joint effects are disposed of to better advantage (Id.; Ex parte Hardcastle, 1 Cox, 397).

There are several American cases and authorities which seem to have some slight bearing upon the questions presented in this case, but, I have not time to state them in detail. The case of Ayer v. Brastow [Case No. 682]. and authorities there cited; the case In re Abbe [Id. 4]; Story, Partn. §§ 313, 374–409; the case In re Grady [Case No. 5,654]; the case In re Beal [Id. 1,156], and doubtless many others, may deserve a more careful and deliberate consideration than I am at present able to bestow upon them. See, also, Collier, Partn. bk. 4, c. 2, § 3.

It was strongly urged upon the argument, that there should be an adjudication in this case, because the creditors of Leland Brothers could not participate in the selection of an assignee in the Southern district, and that they should not be deprived of the right to participate in the choice of the assignee who is to administer such joint estate. So far as it is well founded, this objection, or a similar one, exists in every case of bankruptcy proceedings by or against two or more persons as partners, where the members of the firm have separate estates and owe individual debts; for the separate creditors of the individual members of the firm are in that case excluded from any participation in the selection of an assignee by the express provisions of the bankruptcy act. But, although so excluded, they and the creditors of Leland Brothers, in the case pending in New York, may apply for the removal of an improper assignee; and as the selection of an assignee is in all cases subject to the approval of the district judge, creditors who cannot vote on the selection of the assignee may, nevertheless, on showing cause against it, prevent the confirmation of an improper

selection, as well as apply, after confirmation, for the removal of an assignee. Besides, the power of the court to appoint an additional assignee in all cases enables it to protect the interests of the different classes of creditors whenever there is the slightest reason to suspect that an assignee chosen by creditors, or appointed by a register, will not regard with equal favor the rights of all the creditors of the bankrupts.

[NOTE. The bankruptcy of Leland Bros. was considered by both district and circuit courts, S. D. New York. The district court passed upon certain bonds secured by the Saratoga Springs property. Case No. 8,229. . The circuit court upon review, considered the petition of Platt, assignee, as to certain claims of creditors under a chattel mortgage. Case No. 8,234. The district court passed. upon the question of fraudulent preferences upon a petition involving mortgages on the Saratoga Springs property. Case No. 8,-230. Again the same court considers a re-examination of the debts in issue in the last case. Case No. 8,231. Upon the question of the discharge of the bankrupt the district court considered certain papers offered for admission by the register in Case No. 8,232. The right of another creditor to prove his claim is denied in Case No. 8,233. . The right of the assignee to maintain suits against the fraudulently preferred creditors is sustained in Case No. 11.220. The circuit court, in Case No. 8,235. passes upon the question as to the right of the district court to expunge the claim of a fraudulently preferred creditor.]